# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| EMMA PRASSENOS, | : | |
| Plaintiff, | : | |
| E.I. DUPONT DE NEMOURS AND COMPANY and BENEFLEX EMPLOYEE LIFE INSURANCE PLAN OF E.I. DUPONT DE NEMOURS AND COMPANY, | : : : : | CA 13-00419-KD-C |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**

This matter is before the Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the Defendants' motion to dismiss (doc. 7) and brief in support (doc. 8), the Plaintiff's response (doc. 13), the Defendants' reply (doc. 14), and the Plaintiff's objection to the Defendants' reply and motion for leave to file a sur-reply (doc. 15). After consideration of the Defendants' motion and the briefs of the parties, it is the Magistrate Judge's **RECOMMENDATION** that the Defendants' motion to dismiss be **DENIED** and that the Plaintiff's jury demand be **STRICKEN** as discussed below. The Plaintiff's motion for leave to file a sur-reply (doc. 15) is **MOOT**.

## **Background**

The Plaintiff, Emma Prassenos, brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), following the denial of life insurance benefits by the Defendants, E. I. du Pont de Nemours and Company ("DuPont") and BeneFlex Employee Life Insurance Plan of E. I. du Pont de Nemours and Company ("BeneFlex"). (Doc. 1.) She alleges that she is a beneficiary

under her late husband, William Prassenos' BeneFlex Employee Life Insurance Plan, ("ELIP"), and that she is a participant and insured under the BeneFlex Dependent Life Insurance Plan, ("DLIP"). (*Id.*, ¶ 4.) Following her husband's death, DuPont denied the Plaintiff's request for benefits under the ELIP in the amount of two times her husband's annual salary. DuPont informed her that she was only entitled to recover an amount equal to one times her husband's annual salary, which was approximately $100,000. Additionally, DuPont denied the Plaintiff's request to continue her DLIP policy.

After exhausting her administrative remedies, the Plaintiff filed a Complaint in this Court asserting a claim for the recovery of benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B), (doc. 1, ¶¶ 23-28), and asserting a breach of fiduciary duty claim, pursuant to 29 U.S.C. § 1132(a)(3), (doc. 1, ¶¶ 29-39). The Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. (Docs. 7 and 8.) The Defendants also move the Court to strike the Plaintiff's jury demand, (doc. 1 at 15; doc. 1-1, ¶ VII), in the event the motion to dismiss is denied. (Doc. 7 at 2 n.1; doc. 8 at 4 n.1.)

## **Legal Standard for Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss for failure to state a claim questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true, *see, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990), and all factual allegations, moreover, are to be construed in the light most favorable to the plaintiff, *see, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989); *see also Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (same).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S.

662, 677-78 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id*. at 678-79 (internal citations and quotation marks omitted); *see also id*. at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."); *compare Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and

*Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'"), *with Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("Factual allegations in a complaint need not be detailed but 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'") (quoting *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted)).

### **Relevant Allegations in the Complaint**

The following allegations are the most relevant for the issues at hand and the undersigned accepts them as true for purposes of the Defendants' Motion to Dismiss:

> 4. . . . . DuPont and its predecessors actively employed Mr. Prassenos from April 1983 through at least May 31, 2012, a period of more than twenty-nine (29) years. Emma Prassenos is a beneficiary under the [ELIP] and was also a participant and an insured under the [DLIP]. Her now deceased husband, Mr. Prassenos, was a participant and insured under the [ELIP] and was a participant and beneficiary under the [DLIP].
>
> 5. According to [DuPont], on June 1, 2012, Mr. Prassenos separated from [DuPont] and was retired. According to [DuPont], Mr. Prassenos was also disabled.
>
> 6. On August 9, 2012, Mr. Prassenos died of cancer at age 58.
>
> 10. On November 2, 2012, [DuPont], in a letter to Emma Prassenos by E.R Bilson, a delegate of the [DuPont] Benefit Appeals Committee, determined life insurance coverage under the [ELIP] on her husband had been reduced on June 1, 2012, by an amount equal to his annual pay, which was more than one hundred thousand dollars ($100,000), and that separate spousal life insurance coverage on Emma Prassenos under the [DLIP], valued at one hundred thousand dollars ($100,000), would not be continued. A copy of the November 2, 2012, letter is attached as Exhibit "A" to this Complaint.
>
> 11. The November 2, 2012, letter from [DuPont] stated that Mr. Prassenos had the right to convert his insurance on his life and wife's life "by contacting Prudential within 31 days of the loss," presumably the June 1, 2012, date of separation date of his employment. According to

[DuPont]'s letter, "A COBRA Enrollment Package was mailed to Mr. Prassenos on May 31, 2012, which would have included the life insurance conversion notice."  No such notice was included in any of the COBRA notices sent by [DuPont] to Mr. Prassenos.

12.     The November 2, 2012, letter from [DuPont] . . . stated that the summary plan description of the 2008 [DLIP] on page 8 provides: "Your [DLIP] coverage ends on any of the following: 1. the end of the month that you are no longer eligible, 2. the end of the month that your covered dependent is no longer eligible.  Records show that your husband separated from DuPont on June 1, 2012, under the provisions of the Total and Permanent Disability Income Plan.  Once separated, he was neither eligible to be enrolled in any more that [sic] the 1 x Pay of BeneFlex Life Insurance nor eligible to maintain the Spouse Life Insurance with DuPont."

14.     The summary plan description of the [ELIP], Exhibit "B", does not explain or require that a twenty-nine (29) year employee, who on June 1, 2012, retires and is disabled due to cancer that killed him seventy days later on August 9, 2012, loses any of his coverages or that he must convert any of his policies within thirty-one days.  In fact, the summary plan description states on page 9 under the heading, "If you Retire" provides, "If you are eligible to retire under the Pension and Retirement Plan and are less than age 65 and qualify for [ELIP] coverage as a retiree, you are entitled to continue the total amount of life insurance coverage in force when you retire.  The Company will pay for coverage equal to one times your pay at retirement.  You may purchase the difference between one times your pay and the total amount of coverage at retirement."

16.     The summary plan description of the [DLIP], Exhibit "C", states on page 8 that a spouse may apply for coverage under the portability feature "if your coverage ends for reasons other than disability," but on the next page the summary plan description states, "Portability is a feature of the Plan that allows your spouse/partner to obtain similar group term life insurance coverage after you terminate, . . . **The requirement that you also port your coverage is waived in the cases of retirement, . . .**" (Emphasis Added [in the Complaint]).

17.     The November 2, 2012, letter from [DuPont], Exhibit A, states: "Mr. Prassenos had the right to convert the 1 x Pay of additional life insurance and the Spouse Life Insurance by contacting Prudential within 31 days of the loss."

18.     In a letter from [DuPont] dated June 1, 2012, and entitled "Confirmation of Lost Coverage," [DuPont] informed Mr. Prassenos that his [ELIP] "2 x Pay" insurance coverage ended on May 31, 2012, and that Emma Prassenos' "Spouse/Partner Live Insurance" "$100,000" coverage ended on May 31, 2012. . . . <u>The June 1, 2012, letter did not contain any information about continuation or conversion of the life insurance</u>

5

coverage. The letter also did not contain the name of The Prudential Insurance Company of America. A copy of the June 1, 2012, notice is attached to this Complaint as Exhibit "D".

19. The June 1, 2012 notice, Exhibit "D", was materially misleading, incomplete, and inaccurate because it did not also include any information that the insurance could be maintained by Mr. Prassenos or Emma Prassenos paying a relatively nominal premium and notifying The Prudential Insurance Company of America. Rather the June 1, 2012, notice stated that both the additional insurance on Mr. Prassenos and the insurance on Emma Prassenos had terminated the day before, to wit: May 31, 2012.

20. Furthermore under the summary plan description of the [ELIP] Mr. Prassenos, who was less than age 65, was entitled to continue the total amount of his coverage.

21. Furthermore under the summary plan description of the [DLIP] Emma Prassenos, who was less than age 70, was entitled to port the total amount of her coverage.

(Doc. 1.)

## Analysis

### Count I—Recovery of Benefits under Mr. Prassenos' ELIP

In Count I of her Complaint, the Plaintiff asserts a claim for the recovery of life insurance benefits in excess of $100,000 under her husband's employee life insurance plan (the ELIP). (Doc. 1, ¶¶ 23-28.) The Defendants argue that the benefits sought were properly denied by the plan administrator in accordance with the terms of the plan documents. (Doc. 8 at 12-13 (citing 29 U.S.C. § 1104.) The Defendants argue that the Plaintiff is not entitled to recover ELIP benefits because Mr. Prassenos' ELIP coverage ended and he failed to convert it to an individual policy as he was directed in the 2008 Summary Plan Description for the ELIP. (Doc. 8 at 12-18.) The Defendants rely on the following language from the Summary Plan Description:

*If you leave the Company*

Your [ELIP] coverage ends at the end of the month in which you leave the Company or are no longer eligible. Under some circumstances, you may

> be eligible to convert your ELIP coverage to an individual policy . . . .
> Refer to the "Conversion rights" . . . section[] for more information.
>
> . . . .
>
> *Conversion rights*
>
> To exercise your conversion rights, you must be enrolled in [ELIP] coverage at the time of the event that results in the loss of or reduction in coverage. You must contact the insurance company within 31 days of the end of your coverage under this Plan to exercise your conversion rights for [ELIP] coverage.

(*Id.* at 31, 34.)

The Defendants argue that Mr. Prassenos' ELIP coverage ended when he separated from DuPont on June 1, 2012, and that Mr. Prassenos then had a 31-day window following that date to convert his coverage to an individual life policy.[1] (Doc. 8 at 13-15.) The Defendants argue that, despite the clear direction from the Summary Plan Description passages above, Mr. Prassenos failed to convert his ELIP coverage to an individual life policy and, consequently, Plaintiff is foreclosed from recovering benefits under her husband's ELIP. (*Id.* at 15-16.)[2]

---

[1] The undersigned notes that, *if* Mr. Prassenos separated from DuPont on June 1, 2012, as the Defendants contend, and *if* the passages referenced above control the timing of the termination of Mr. Prassenos' ELIP coverage, as the Defendants contend, then it appears that his coverage would have ended on June 30, 2012—not June 1, 2012—because June 30, 2012, is "*at the end of the month* in which [the Defendants' claim he] left the Company." (*See* doc. 1 at 31 (emphasis added).) The Plaintiff, in her response, argues that Mr. Prassenos separated from DuPont on June 1, 2012, and, thus, "the earliest date triggering a conversion . . . time period would have been June 30, 2012. (Doc. 13 at 16 n.11.) The undersigned makes no determination as to coverage termination dates, conversion deadlines, or the method for identifying those dates. The undersigned merely notes that the Defendants' determination that the coverage ended on June 1, 2012, appears to be unsubstantiated by the language on which they rely in the Summary Plan Description.

[2] Additionally, the Defendants argue that, after the ELIP coverage ended, life insurance coverage began under the DuPont Total and Permanent Disability Income Plan ("T&P Plan"), and the Plaintiff was able to recover benefits pursuant to that plan. (Doc. 8 at 14.) The T&P Plan is not attached to the Complaint. (*See* doc. 1.) The Defendants attached it to their motion to dismiss as Exhibit 1. (Doc. 8-1.) Although extrinsic documents are normally not considered in conjunction with a Rule 12(b)(6) motion to dismiss, the undersigned will consider the T&P Plan because it appears to be central to the Plaintiff's claims and the Plaintiff has not

7

However, the Plaintiff argues that, according to the terms of the Summary Plan Description, Mr. Prassenos' coverage should have continued after he retired. The Plaintiff alleges that the ELIP Summary Plan Description "does not explain or require that a twenty-nine (29) year employee, who on June 1, 2012, retires and is disabled . . . loses any of his coverages or that he must convert any of his policies within thirty-one days." (Doc. 1, ¶ 14.) The Plaintiff relies on the following passage in the Summary Plan Description regarding the status of coverage in the event an employee retires:

> *If you retire*
>
> If you are eligible to retire under the Pension and Retirement Plan and are less than age 65 and qualify for [ELIP] coverage as a retiree, you are entitled to continue the total amount of life insurance coverage in force when you retire. The Company will pay for coverage equal to one times your pay at retirement. You may purchase the difference between one times your pay and the total amount of coverage at retirement.

(Doc. 1 at 31.)[3] Thus, the Plaintiff argues that, because Mr. Prassenos retired, his coverage should have continued under the terms of the paragraph entitled "*If you retire*" and that it should not have terminated under the terms of the paragraph entitled "*If you leave the company*," as argued by the Defendants.

After considering the allegations of the Complaint and the arguments of the parties, the undersigned concludes that it is plausible that the Plaintiff could show that Mr. Prassenos' coverage continued after his retirement and that he was not required to convert his coverage. Based on a plain reading of the terms of the ELIP Summary Plan Description, the undersigned cannot conclude, at this stage, that the Plaintiff will not be able to prove any set of facts to prove her case.

---

objected to it or challenged its authenticity. *See SFM Holdings, Ltd. v. Banc of America Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005)).

[3] The Plaintiff quotes the passage above in paragraph 14 of her Complaint. (Doc. 1, ¶ 14.)

8

The cases cited by the Defendants do not persuade the undersigned to reach a different conclusion. The defendants primarily rely on *Fitch v. Unum Life Ins. Co. of Am.*, 913 F. Supp. 2d 1253, 1263 (N.D. Ala. 2012), and *Hird v. Bostrom Seating, Inc.*, 147 F. Supp. 2d 1190, 1203 (N.D. Ala. 2001). (*See* doc. 8 at 16-17.) Of those two cases, only *Hird* involved a retired employee. *See Fitch*, 913 F. Supp. 2d at 1257 (addressing the denial of life insurance benefits after the death of a former employee who had been terminated and given a severance); *Hird*, 147 F. Supp. 2d at 1200-01 (addressing the denial of life insurance benefits after the death of a retiree). Neither case involves plan language similar to the language found in Mr. Prassenos' ELIP Summary Plan Description that provides that an employee is "entitled to continue the total amount of life insurance coverage in force when [he] retire[s,]" (doc. 1 at 31). *See Fitch*, 913 F. Supp. 2d at 1261 (discussing plan language dictating that coverage ended the last day of active employment); *Hird*, 147 F. Supp. 2d at 1193-96 (discussing plan language providing that coverage ends when "a person stops *active* work"; and also discussing a change to the retirement policy providing that the "retirement policy requires that the group life insurance coverage . . . ceases at retirement and must be converted"). Thus, *Fitch* and *Hird* are distinguishable from this case. The other cases cited by the Defendants are distinguishable as well.[4]

Furthermore, the Defendants have not provided any legal authority to support

---

[4] The other cases cited by the Defendants are *Sippel v. Reliance Standard Life Ins. Co.*, 128 F.3d 1261, 1262-63 (8th Cir. 1997), *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552-53 (7th Cir. 1997), and *Erlitz v. Cracker Barrel Old Country Store, Inc.*, 416 F. Supp. 2d 711, 713-21 (E.D. Mo. 2006). (Doc. 8 at 16-17.) In *Sippel*, the deceased former employee had not retired, and the policy language stated that coverage ceased when employment ceased. *See Sippel*, 128 F.3d at 1262-63. *Riordan* involved a dispute regarding the identity of the beneficiary, not a dispute regarding whether coverage was terminated or converted. *See Riordan*, 128 F.3d at 550-51. *Erlitz* involved life insurance coverage pertaining to a non-retiree and plan language providing that an employee's eligibility for life insurance coverage is contingent on that employee's enrollment in the health insurance plan. *See Erlitz*, 416 F. Supp. 2d at 721.

dismissal at this stage of the proceedings pursuant to Rule 12(b)(6). The Defendants state that "[c]ourts both inside and outside the Eleventh Circuit have not hesitated to *deny* ERISA claims to recover benefits when a plan participant fails to exercise conversion rights as set forth in the [summary plan description]." (Doc. 8 at 16 (emphasis added).) However, the Defendants fail to show that said courts have not hesitated to *dismiss* ERISA claims, such as the Plaintiff's, for failure to state a claim. Notably, none of the cases cited by the Defendants involved dismissal of such claims pursuant to Rule 12(b)(6).[5] The Defendants make no attempt to explain why the Court should dismiss Plaintiff's claim at this stage in the proceedings before the parties have engaged in any discovery. (*Id.*)

While the Defendants may ultimately prevail in this action, the undersigned has determined that, when accepting the well-pled allegations of the Complaint as true and construing them in the light most favorable to the Plaintiff, the Plaintiff has stated a plausible claim for relief.

The undersigned acknowledges that the Defendants argue, for the first time in their reply, that Mr. Prassenos' ELIP coverage could not have continued after retirement pursuant to the terms of the "***If you retire***" paragraph of the Summary Plan Description because he was not a "*DuPont* retiree." (*See* doc. 14 at 3 ("To avoid having to exercise the conversion and porting requirements, Mr. Prassenos would have had to have been a *DuPont* retiree.").) The Defendants further argue that the Plaintiff has not sufficiently

---

[5] As discussed above, the Defendants cite to *Fitch*, *Hird*, *Sippel*, *Riordan*, and *Erlitz*. (Doc. 8 at 16-17.) In *Fitch*, *Hird*, and *Riordan*, the courts addressed motions for summary judgment. *Fitch*, 913 F. Supp. 2d at 1263; *Hird*, 147 F. Supp. 2d at 1203; *Riordan*, 128 F.3d at 552-53. In *Erlitz*, the Eastern District of Missouri entered judgment following a trial before the court. *Erlitz*, 416 F. Supp. 2d at 713-21 (making numerous findings of fact based, in part, on the evidence presented at trial). In *Sippel*, the Eighth Circuit affirmed the judgment of the district court without explaining the procedural posture of the case. *See Sippel*, 128 F.3d at 1262-63 (conducting no Rule 12(b)(6) analysis).

alleged that Mr. Prassenos was a DuPont retiree, and that the Plaintiff cannot prove that fact. (*Id.* at 1-6.) Because the Defendants' arguments in this regard were raised for the first time in the Defendants' reply brief, (*compare* doc. 8, *with* doc. 14), they are not properly before the Court. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005); *Gould v. Transamerica Life Ins. Co.*, Civil Action No. 11-0730-WS-C, 2013 WL 68873, at *4 (S.D. Ala. Jan. 3, 2013). However, assuming *arguendo*, that the Defendants' arguments had been asserted in their initial brief, the undersigned would have found them unconvincing.

Despite the Defendants' arguments to the contrary, the Plaintiff has sufficiently pled that Mr. Prassenos was a retired former employee of DuPont and entitled to continuing life insurance coverage under the terms of the ELIP.[6] Furthermore, the Defendants concede that Mr. Prassenos was a DuPont employee, (doc. 8 at 4), and that he was retired, (doc. 14 at 1-2, 4-6).

Nevertheless, the Defendants claim that, despite retiring from DuPont, Mr. Prassenos was not a "DuPont retiree" and he needed to be a "DuPont retiree" in order to avoid the conversion requirements for his coverage. (Doc. 14 at 4-6.) The Defendants, however, have not substantiated either of those points. They, notably, have not supported their argument with any citation to legal authority or the plan at

---

6 (*See* doc. 1, ¶ 5 ("Mr. Prassenos separated from [DuPont] and was retired."); doc. 1, ¶ 14 ("The summary plan description of the [ELIP], Exhibit 'B', does not explain or require that a twenty-nine (29) year employee, who on June 1, 2012, retires and is disabled due to cancer that killed him seventy days later on August 9, 2012, loses any of his coverages or that he must convert any of his policies within thirty-one days. In fact, the summary plan description states on page 9 under the heading, 'If you Retire' provides, 'If you are eligible to retire under the Pension and Retirement Plan and are less than age 65 and qualify for [ELIP] coverage as a retiree, you are entitled to continue the total amount of life insurance coverage in force when you retire. The Company will pay for coverage equal to one times your pay at retirement. You may purchase the difference between one times your pay and the total amount of coverage at retirement.'); doc. 1, ¶ 20 ("Furthermore under the summary plan description of the [ELIP] Mr. Prassenos, who was less than age 65, was entitled to continue the total amount of his coverage.").)

issue—the ELIP Summary Plan Description, attached to the Complaint as Exhibit B. Instead, the Defendants cite to "retirement package materials" attached to their reply brief that Defendants claim demonstrate that Mr. Prassenos was a "ChemFirst retiree." (Doc. 14-1.) Those documents are on ChemFirst Inc. letterhead and the first page indicates that the packet relates to Mr. Prassenos' "pension benefit from the Retirement Plan for Employees of ChemFirst Inc." (*Id.* at 3.) Although those materials might constitute evidence that Mr. Prassenos was an employee of ChemFirst Inc., they do not establish that he was not a "DuPont retiree," or that he was not eligible for DuPont retirement benefits. Moreover, those materials certainly do not establish, for purposes of a Rule 12(b)(6) motion to dismiss, that the Plaintiff cannot show that her husband was entitled to life insurance coverage as a retired employee, pursuant to the terms of the ELIP Summary Plan Description.

The only reference to plan language that the Defendants make in their reply is to a provision in the T&P Plan stating that, if an employee "**become[s] disabled and [is] *not* eligible for DuPont retiree benefits**[] . . . [ELIP coverage] is discontinued upon employment termination." (*Id.* at 2 (citing doc. 8-1 at 6) (emphasis in original).) However, as stated above, the Defendants have not established that Mr. Prassenos was not eligible for DuPont retiree benefits.

Significantly, the Defendants ignore the critical language in the plan at issue. The ELIP Summary Plan Description does *not* state that only a "DuPont retiree" is entitled to continue life insurance coverage after retirement. (*See* doc. 1 at 31.) Rather, it states that an employee is entitled to continue coverage "[i]f [he] [is] eligible to retire under the Pension and Retirement Plan and [is] less than age 65 and qualif[ies] for Employee Life Insurance plan coverage as a retiree." (*Id.*) The Defendants have done nothing to show that the Plaintiff will be unable to prove facts to meet those

requirements. The fact that the Defendants have spurred a factual dispute as to whether Mr. Prassenos was a "DuPont retiree," or otherwise met the requirements for continued life insurance coverage, further demonstrates that this matter should not be resolved on a Rule 12(b)(6) motion.

Accordingly, because the undersigned cannot at this initial stage of the proceedings determine that the Plaintiff could prove no set of facts in support of her claim for the recovery of life insurance benefits under her husband's ELIP, it is **RECOMMENDED** that the Court **DENY** the Defendants' motion with respect to Count I of the Complaint.

**Count II—Breach of Fiduciary Duty**

The Plaintiff brings her breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(3), which provides, in pertinent part, that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain [] appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). The fiduciary duties imposed by ERISA provide that

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *See* 29 U.S.C. § 1104(a)(i)(A) & (B).

*Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 825 (11th Cir. 2001). The United States Supreme Court has commented that a fiduciary fails to fulfill those duties when it "knowingly and significantly [] deceiv[es] a plan's beneficiaries in order to save the employer money at the beneficiaries' expense." *Varity v. Howe*, 516 U.S. 489, 506 (1996) (concluding that the employer and plan administrator breached ERISA's fiduciary obligations when it misled the beneficiaries). The Supreme Court further stated that

"'[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA.'" *Id.* (citing *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) (other citations omitted).

In Count II of the Complaint, the Plaintiff alleges that DuPont, as the administrator of the ELIP and DLIP, "breached its fiduciary duty to [the Plaintiff] by misleading both Mr. Prassenos and [the Plaintiff] with incomplete and inaccurate information regarding the terms of the [ELIP] and the [DLIP]." (Doc. 1, ¶ 32.) The Plaintiff alleges that, as a result of said breach, the Plaintiff was injured in the form of:

> (1) the loss of the life insurance proceeds on the lives of both Mr. Prassenos and [the Plaintiff]; and (2) loss of earnings on the loss of the life insurance proceeds, including interest on the benefits on the life of Mr. Prassenos that should have been previously paid to [the Plaintiff].

(*Id.*, ¶ 35.) The Plaintiff seeks "[t]he equitable remedy of surcharge . . . in the form of an award of monetary compensation against [DuPont]. (*Id.*, ¶ 33.)

The Defendants argue that Plaintiff's breach of fiduciary duty claim should be dismissed for failure to state a claim because (1) DuPont provided the Plaintiff and her husband with accurate information regarding their coverage; and (2) DuPont did not have a duty to provide the Plaintiff and her husband with individualized notice of their conversion rights. (Doc. 8 at 19-25.) With regard to the first point, the Defendants argue that DuPont provided, through the ELIP and DLIP Summary Plan Descriptions, clear and accurate information regarding Mr. Prassenos' and the Plaintiff's coverage. (*Id.* at 20-21.) However, the Plaintiff does not argue that the Summary Plan Descriptions were inaccurate and misleading. The Plaintiff asserts that her claim is based on DuPont's June 1, 2012 letter. (Doc. 13 at 24-25.) In the June 1, 2012 letter, which is attached to the Plaintiff's Complaint as Exhibit D, DuPont stated that the life insurance and health insurance coverage held by the Plaintiff and her husband ended

on May 31, 2012. (Doc. 1 at 63.) DuPont stated in the letter that the health insurance coverage could be continued, but it included no comments regarding the life insurance coverage. (*Id.*) The Plaintiff argues that the letter is inaccurate and misleading because the coverage did not end on May 31, 2012. (Doc. 13 at 25.) The Plaintiff also argues that DuPont further misled the Plaintiff and her husband by including language pertaining to the continuation of health coverage, yet omitting any language regarding the continuation of life insurance coverage. (*Id.*) The Plaintiff contends that, by crafting the language of the letter in that manner, DuPont implied that the Plaintiff and her husband could not continue their coverage when, in fact, they could. (*Id.*)

The undersigned finds that the Plaintiff has adequately alleged that DuPont breached its fiduciary duty by delivering inaccurate and misleading information. As stated above, based on the language in the ELIP Summary Plan Description, the Plaintiff may be able to prove that Mr. Prassenos' ELIP coverage continued after he retired on June 1, 2012.[7] If his coverage continued beyond June 1, 2012, the statement in DuPont's letter that coverage ended on May 31, 2012, would appear to be inaccurate and misleading. (*See* doc. 1 at 63.) Furthermore, if the Defendants can ultimately establish that the ELIP coverage ended at the end of the month in which Mr. Prassenos retired, as they argue in their brief, (doc. 8 at 13-15), it would seem that coverage would have ended on June 30, 2012, and DuPont's letter could still be construed as inaccurate and misleading.[8][9] Additionally, if the Plaintiff can establish that the ELIP coverage

---

[7] *See supra*, at 8-12.

[8] *See supra*, n.1.

[9] This argument regarding the date of coverage termination applies to the DLIP coverage as well. The Plaintiff argues that, based on the language in the DLIP Summary Plan Description, the Plaintiff's DLIP coverage ended, at the end of the month in which Mr. Prassenos left DuPont. (Doc. 13 at 15 n.9.) The Plaintiff may be able to prove that the DLIP

continued after Mr. Prassenos' retirement, she may also be able to show that DuPont's letter misled the Plaintiff and her husband by stating that the coverage was "lost" and "canceled," while including language regarding continuation of medical coverage, yet failing to include language regarding continuation of the ELIP coverage or portability of the DLIP coverage.[10] (*See id.*)

The Defendants also argue that the Plaintiff has failed to state a claim for breach of fiduciary duty because she, essentially, seeks to recover for failing to receive individualized notice of conversion rights, and such notice is not required. (Doc. 8 at 22-24.) The Defendants assert that "a plan administrator has no obligation under ERISA to provide individualized notice regarding life insurance conversion rights." (*Id.* (citing *Walker v. Federal Express Corp.* 492 Fed. App'x. 559 (6th Cir. 2012); *Bicknell v. Lockhead Martin Group Benefits Plan*, 410 Fed. App'x. 570, 575 (3d Cir. 2011); *Howard v. Gleason Corp.*, 901 F.2d 1154 (2d. Cir. 1990)).) However, the Defendants' argument in this regard fails because it is not applicable to this case. Based on the allegations in the Complaint and the foregoing discussion, the undersigned cannot conclude that the Plaintiff is merely seeking to recover for failing to receive individualized notice of conversion rights. Rather, the Plaintiff seeks to recover for a notice from DuPont that she did receive, but that contained misleading and inaccurate information. (*See* doc. 1, ¶¶ 18-19, 32, 35; doc. 13 at 24-25.)

While the undersigned has not concluded, at this stage in the proceedings, that DuPont, in fact, violated its fiduciary duties, the undersigned finds that the Plaintiff has

---

coverage ended on June 30, 2012, and that DuPont's letter was inaccurate and misleading for stating that the DLIP coverage ended on May 31, 2012. (*See* doc. 1 at 63.)

[10]   The language in the DLIP Summary Plan Description indicates that the Plaintiff maintained certain portability rights after the DLIP coverage ended. (*See* doc. 1 at 56.)

alleged sufficient facts for her to pursue a plausible breach of fiduciary duty claim. Accordingly, it is **RECOMMENDED** that the Court **DENY** the Defendants' motion with respect to Count II of the Complaint.

### Jury Demand

The Defendants argue that, in the event their motion to dismiss is denied, the Court should strike the Plaintiff's jury demand. (Doc. 7 at 2 n.1; doc. 8 at 4 n.1.)

"It is well-settled that plaintiffs bringing ERISA claims are not entitled to jury trials under ERISA because such claims are equitable in nature." *Rolland v. Textron, Inc.*, 300 Fed. App'x. 635, 636 (11th Cir. 2008) (per curiam) (citing *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1287 n.** (11th Cir. 1998); *Hunt v. Hawthorne Assoc., Inc.*, 119 F.3d 888, 907 (11th Cir. 1997); *Stewart v. KHD Deutz of Am. Corp.*, 75 F.3d 1522, 1527 (11th Cir. 1996)); *Estate of Wasden v. Citizens Communications*, Civil Action No. 13-0002-KD-B, 2013 WL 2458506, at *9 (S.D. Ala. June 6, 2013) (citing *Stewart*, 75 F.3d at 1527; *Rolland*, 300 Fed. App'x at 636; *Broaddus*, 145 F.3d at 1287 n.2).

The Plaintiff did not respond to the Defendants' argument that the jury demand should be stricken. In fact, the Plaintiff apparently conceded that her jury demand should be stricken by indicating that this case will require a bench trial if it is not resolved at the summary judgment stage. (*See* doc. 13 at 9 n.4.) Accordingly, it is hereby **RECOMMENDED** by the undersigned that the Court **STRIKE** the Plaintiff's jury demand.

### Conclusion

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that the Defendants' motion to dismiss (doc. 7) be **DENIED**, and that the Plaintiff's jury demand be **STRICKEN**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of March 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**